*Gainesville*

**✼ Citizens Bank**

Form 240A - Reaffirmation Agreement (1/07)

___ Presumption of Undue Hardship
___ No presumption of Undue Hardship
(Check box as directed in Part D: Debtor's
Statement in Support of Reaffirmation Agreement.)

United States Bankruptcy Court
NORTHERN DISTRICT OF GEORGIA

In re MAN   BUI                                              Case No. 07-21834
                    Debtor                                    Chapter __7__

REAFFIRMATION AGREEMENT

(Indicate all documents included in this filing by checking each applicable
box.)

_X_ Part A: Disclosures, Instructions, and Notice to Debtor (Pages 1 - 5)
_X_ Part B: Reaffirmation Agreement
_X_ Part C: Certification by Debtor's Attorney
_X_ Part D: Debtor's Statement in Support of Reaffirmation Agreement

_X_ Part E: Motion for Court Approval
_X_ Proposed Order Approving Reaffirmation Agreement


Name of Creditor: _____CITIZENS BANK                    _____

__(Check this box if) Creditor is a Credit Union as defined in subsection 19(b) (1) (a) (iv)
of the Federal Reserve Act

PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

1. DISCLOSURE STATEMENT

Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:

SUMMARY OF REAFFIRMATION AGREEMENT

This Summary is made pursuant to the requirements of the Bankruptcy Code.

AMOUNT REAFFIRMED

a. The amount of debt you have agreed to reaffirm:        5,437.59
b. All fees and costs accrued as of the date of this
   disclosure statement, related to the amount of debt
   shown in a., above:                                        0.00
c. The total amount you have agreed to reaffirm
   (Debt and fees and costs) (Add lines a. and b.):        5,437.59


Your credit agreement may obligate you to pay additional amounts which may come
due after the date of this disclosure. Consult your credit agreement.

<<1014789828                       >>

**Citizens Bank**

Form 240A - Reaffirmation Agreement (Cont.)                                                 P. 2

## ANNUAL PERCENTAGE RATE

(The annual percentage rate can be disclosed in different ways, depending on the type of debt.)

a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in subsection 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____ %.

- And/Or -

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

    _____ @ _____ %;

    _____ @ _____ %;

    _____ @ _____ %.

b. If the debt is an extension of credit other than under an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate under subsection 128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: 6.8900000%.

- And/Or -

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed,

<<1014789828                    >>

**Citizens Bank**

Form 240A - Reaffirmation Agreement (Cont.)                                P. 3

the amount of each balance and the rate applicable to it are:
   _____ @ _____%;

   _____ @ _____%;

   _____ @ _____%.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

   The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in PART B.

Item or Type of Item            Original Purchase Price or Original Amount of Loan

2001 DODGE CARAVAN  , Vin# 2B4GP44361R272594         15,700.21


Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:


Repayment Schedule:

Your first payment in the amount of      310.92 is due on 10/16/07 (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

                                ---Or--

Your payment schedule will be: _____(number) payments in the amount of _____ each, payable (monthly, annually, weekly, etc.) on the_____ (day) of each _____ (week, month, etc.), unless altered later by mutual agreement in writing.

                                ---Or--

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

<<1014789828                     >>

**✳ Citizens Bank**

Form 240A - Reaffirmation Agreement (Cont.)                                    P. 4

2. INSTRUCTIONS AND NOTICE TO DEBTOR

Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. IF THE CREDITOR IS NOT A CREDIT UNION and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. IF THE CREDITOR IS A CREDIT UNION and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

<<1014789828                    >>

**Citizens Bank**

Form 240A - Reaffirmation Agreement (Cont.)                              P. 5


YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

FREQUENTLY ASKED QUESTIONS:

WHAT ARE YOUR OBLIGATIONS IF YOU REAFFIRM THE DEBT? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

ARE YOU REQUIRED TO ENTER INTO A REAFFIRMATION AGREEMENT BY ANY LAW? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

WHAT IF YOUR CREDITOR HAS SECURITY INTEREST OR LIEN? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

> NOTE: When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.


<<1014789828                          >>

**Citizens Bank**

Form 240A - Reaffirmation Agreement (Cont.)                              P. 6

PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement: Retail Installment Contract

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement: None

SIGNATURE(S):

Borrower:                                                     Co-borrower, if also reaffirming these debts:

MAN  BUI                                                      Tammi Bui
_____                                    _____
(Print Name)                                                  (Print Name)

_____                                    _____
(Signature)                                                   (Signature)
Date: 10-08-07                                                Date: 10-08-07

Accepted by creditor:

CITIZENS BANK                                                 Kevin J. Costa
480 Jefferson Blvd, RJE135                                    Assistant Vice President
Warwick, RI  02886                                            Portfolio Administration
                                                              Citizens Bank
                                                              RJE-135
                                                              _____
                                                              (Print Name of Individual Signing for Creditor)

                                                              _____
                                                              (Signature)
                                                              Date of creditor acceptance: 10/15/07

PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

(To be filed only if the attorney represented the debtor during the course of negotiating this agreement.)

   I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequence of this agreement and any default under this agreement.

__ (If applicable and the creditor is not a Credit Union.) A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Susan H Shifenko

Signature of Debtor's Attorney: _____

Date: 09/25/07

<<1014789828            >>



Form 240A - Reaffirmation Agreement (Cont.)                          P. 7

PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

(Read and complete sections 1 and 2, OR, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete section 1 and 2 AND your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship". Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship")

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is 3200.00, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total 2200.00, = $1000.00 left leaving 311.00 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

_____
_____
_____
_____
_____.

(Use an additional page if needed for a full explanation).

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____[signature]_____    _____[signature]_____
        (Debtor) MAN   BUI

Date: 10-08-07

- Or --

(If the creditor is a Credit Union and the debtor is represented by an attorney)

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed:_____    _____
        (Debtor)                                   (Joint Debtor)

Date: _____

<<1014789828                >>

# Georgia Certificate of Title

**DISCLAIMER: DO NOT ACCEPT THIS TITLE WITHOUT THE SECURITY THREAD LOCATED APPROXIMATELY TWO INCHES FROM LEFT EDGE.**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | TYPE OF BODY | MODEL | CYL | DATE ISSUED |
|---|---|---|---|---|---|---|
| 2B4GP44361R272594 | DODGE | 2001 | VAN | CARAVAN | 6 | 01/13/2004 |

| DATE VEHICLE PUR. | FUEL | NEW OR USED | ODOMETER* | PREVIOUS TITLE NBR/STATE OF ISSUE | NBR OF LIENS | COLOR | CURRENT TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 01/02/2004 | GASOLINE | USED | 054565 | 776246020025014/GA | 1 | SIL | 779846040089014 |

**OWNER**
HAN BUI
337 TIMBERRIDGE CT
AUBURN GA 30011-3032

*ODOMETER READING IS ACTUAL MILEAGE OF THE VEHICLE UNLESS OTHERWISE INDICATED BELOW

MAIL TO

CITIZENS AUTO FINANCE
PO BOX 255587
SACRAMENTO   CA   95865-5587

**1ST LIEN OR SECURITY INTEREST**
CITIZENS AUTO FINANCE
PO BOX 255587
SACRAMENTO   CA   95865-5587

**2ND LIEN OR SECURITY INTEREST**

**3RD LIEN OR SECURITY INTEREST**

**RELEASE OF LIEN OR SECURITY INTEREST**

| DATE OF RELEASE | SECURITY INTEREST HOLDER | AUTHORIZED AGENT |
|---|---|---|
| 1ST LIEN | | BY |
| 2ND LIEN | | BY |
| 3RD LIEN | | BY |

The Ga Dept of Motor Vehicle Safety hereby certifies that on Application duly made the person named herein is registered by this Department as the lawful owner of the vehicle described subject to the liens or security interests herein set forth and such liens or security interests as may subsequently be filed with the Commissioner. This Certificate of Title is issued pursuant to the Motor Vehicle Certificate of Title Act and is subject to the provisions thereof.

010258742                *Marshal H. horn*     DMVS COMMISSIONER

12272384

# CITIZENS AUTO FINANCE, INC.

Rev. 5/02

**RETAIL INSTALLMENT CONTRACT**

Dealer Number: _____  Date: 01/02/2004

Buyer: MAN BUI
337 TIMBERRIDGE COURT AUBURN GA 30011
(Print Full Name and Address of Principal Residence)

Co-Buyer: _____
(Print Full Name and Address of Principal Residence)

Creditor-Seller: BARRETT DODGE C/J
P.O. BOX 5338 ATHENS GA 30604
(Print Full Name and Address)

**WHO IS BOUND:** You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing below, you choose to buy the vehicle on credit under the terms on the front and back of this Contract and are individually liable for any amount due. In this Contract, "we", "us", and "our" mean the creditor named above and, after assignment, the creditor's assignee ("Assignee").

**DESCRIPTION OF VEHICLE:** You agree to buy and we agree to sell the following vehicle:

| New, Used or Demo | Year Model | Make and Model | Body Type | Vehicle Identification Number | Key Number |
|---|---|---|---|---|---|
| USED | 2001 | DODGE GRAN CARAVAN | SPORT 4DR | 2B4GP44361R272594 | |

If truck or recreational vehicle – Describe body, gross vehicle weight and major items of equipment sold:

The vehicle is being purchased primarily for ☐ personal, family or household, or ☐ business purposes.

NOTICE TO BUYERS OF USED OR DEMONSTRATION VEHICLES: THE INFORMATION ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.
AVISO A LOS COMPRADORES DE AUTOS DE USO O DE DEMOSTRACION: LA INFORMACION QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHICULO ES PARTE DE ESTE CONTRATO. LA INFORMACION EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACION CONTARIA EN EL CONTRATO DE VENTA.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS | TOTAL SALE PRICE |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit, including your downpayment of $1000.00 |
| 6.89 % | $ 2954.99 | $ 15700.21 | $ 18655.20 | $ 19655.20 |

**PAYMENT SCHEDULE:** Your payment schedule will be 60 monthly payments of $ 310.92 each, due on the same day of each month starting on 02/16/2004

**PREPAYMENT:** You have the right to pay off this Contract early. If you do so, you will not have to pay a penalty.
**SECURITY:** You are giving us a security interest in the motor vehicle being purchased.
**LATE FEE:** If all or any portion of a payment is more than ten days late, you will be charged a default charge of $50 or 5% of the unpaid amount of the installment, whichever is less.
**OTHER TERMS:** Please read this Contract, including the reverse side, for additional information on security interests, nonpayment, default, and our right to require repayment in full before the scheduled maturity date.

### ITEMIZATION OF THE AMOUNT FINANCED

1. Cash Price of Vehicle (including any accessories, services, and taxes):  $ 14922.21 (1)
2. Downpayment:
   A. Trade-in. Your Trade-in is a 1991 FORD T-BIRD
      Year / Make / Model
      Gross Allowance $ 1000.00  less Amount Owing $ N/A  equals Net Trade-in $ 1000.00
      (If Amount Owing exceeds Gross Allowance, enter "0" as Net Trade-in and enter excess as Prior Credit or Lease Balance in Item 4C)
   B. Cash Downpayment  $ N/A
   C. Manufacturer's Rebate Applied to Downpayment  $ N/A
   D. Total Downpayment (A plus B plus C)  $ 1000.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2D):  $ 13922.21 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf:
   A. Amounts Paid to Insurance Companies*:
      1. Vendor's Single Interest Insurance  $ 55.00
      2. Optional Credit Life Insurance  $ N/A
      3. Optional Credit Accident and Health Insurance  $ N/A
   B. Amounts Paid to Public Officials:
      1. Government License and/or Registration Fees  $ N/A
      2. Certificate of Title Fees  $ 18.00
      3. Lien Recording Fees  $ N/A
      4. UCC Filing Fees  $ N/A
   C. Other Charges (Describe who will receive payment and purpose)
      1. To DAIMLER CHRYSLER  For Prior Credit or Lease Balance  $ N/A
      2. To N/A  For SERVICE CONTRACT  * $ 1500.00
      3. To BARRETT DODGE C/J  For N/A  * $ N/A
      4. To _____  For DOC FEE  * $ 205.00
   D. Total Other Charges and Amounts Paid to Others on Your Behalf (A plus B plus C)  $ 1778.00 (4)
5. Amount Financed / Unpaid Balance (3 plus 4D)  $ 15700.21 (5)

*We may be retaining or receiving a portion of these amounts

**PROMISE TO PAY:** You promise to pay us the Amount Financed shown above, in accordance with the payment schedule shown in the Truth In Lending Disclosures Box shown above, plus a Finance Charge determined by applying each day a daily rate of 1/365th (1/366th in a leap year) of the Annual Percentage Rate shown above to the unpaid balance of the Amount Financed. You also agree to pay any late charges you incur.
**PAYMENTS BEFORE OR AFTER DUE DATE:** This is a simple interest Contract. This means that the amount of the Finance Charge shown above may vary depending upon when your payments are received. The earlier you make payments before their due dates, the less Finance Charge you will owe. The later you make payments after they are due, the greater the Finance Charge. We credit each payment in any manner we choose, unless applicable law requires a particular method of payment allocation. We will send you a check for any amount owed you (if it is $1.00 or more) after you make your last payment; we will advise you of any additional amount owed (if it is $1.00 or more). There is a possibility that a supplemental payment of interest might be due if earlier payments were received after their due date.
**LOCATION OF VEHICLE:** The vehicle will be kept at the above address of the Buyer, unless another address is listed below:

_____
(Street and Town)

**VENDOR'S SINGLE INTEREST INSURANCE:** Insurance coverage to protect Assignee for loss or damage to the vehicle (collision, fire and theft) is required. You have the option of furnishing the required insurance either through your existing policies or you may purchase equivalent insurance coverage through anyone you wish acceptable to the Seller. If you elect to purchase this coverage through the Seller, the cost of such insurance is shown in item 4A(1) of the **ITEMIZATION OF THE AMOUNT FINANCED**. The coverage is for the initial term of this Contract. Vendor's Single Interest Insurance is for our sole protection, and your interest is not covered. This insurance does not protect your interest in the vehicle. The charge for this coverage is not refundable upon prepayment unless such a refund is required by law.

**CREDIT INSURANCE:** YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE. YOUR SIGNATURE BELOW MEANS THAT YOU AGREE THAT YOU ELECT THE INSURANCE SHOWN BELOW SUBJECT TO THE FOLLOWING ELIGIBILITY CONDITIONS:

YOU MAY CANCEL THE CREDIT INSURANCE COVERAGE WITHIN 30 DAYS AFTER YOU RECEIVE THE INSURANCE POLICY(IES) OR CERTIFICATE(S) AND RECEIVE A REFUND OR CREDIT OF ALL PREMIUMS PAID BY YOU. THEREAFTER, YOU MAY CANCEL THE POLICY(IES) AT ANY TIME DURING THE TERM OF THIS CONTRACT AND RECEIVE A REFUND OF ANY UNEARNED PREMIUMS. The policies or certificates issued by the insurer will describe the terms and conditions in further detail. If you want the following insurance, sign below.

☐ Life  (☐ Buyer  ☐ Co-Buyer  ☐ Both) at a premium of $ N/A  for a term of N/A
Credit life insurance will pay your debt on this Contract up to $ N/A
☐ Disability, Accident and Health (Buyer Only) at a premium of $ N/A  for a term of N/A
Credit disability, accident and health insurance will pay your debt on this Contract up to $ N/A
The name of the insurer is _____ Name _____ of _____ Home Office Address

Buyer Signature _____ Date _____   Co-Buyer Signature _____ Date _____

**THIS CONTRACT DOES NOT INCLUDE LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

**IMPORTANT:** THE TERMS OF THIS CONTRACT ARE CONTAINED ON BOTH SIDES OF THIS PAGE. READ THE ADDITIONAL TERMS ON REVERSE SIDE BEFORE SIGNING BELOW.

**NOTICE TO THE BUYER:**
1. Do not sign this Contract before you read it or if it contains any blank spaces.
2. You are entitled to an exact copy of the Contract you sign.

By signing below, you acknowledge that you have received a completely filled-in copy of this Contract signed by the Seller on the date of this Contract and a copy of the Citizens Financial Group, Inc. Privacy Notice.

### RETAIL INSTALLMENT CONTRACT

Buyer Signs _[signature]_   Co-Buyer Signs _____

Creditor-Seller Signs _[signature]_   By signing here, the Creditor-Seller accepts this Contract and also agrees to the terms of the Seller's Assignment on the reverse side.

ORIGINAL   CCZ16506 (5/02)

**OTHER IMPORTANT AGREEMENTS:**

**OWNERSHIP AND RISK OF LOSS:** You agree to pay us all you owe under this Contract even if the vehicle is unintentionally damaged, destroyed or missing. You agree not to sell, transfer, or remove the vehicle from the United States for more than 30 days without our written permission. You agree to maintain the vehicle in good condition and repair, except wear and tear caused by ordinary use. We may inspect the vehicle at any reasonable time. You will not expose the vehicle to misuse or confiscation or permit anyone to use the vehicle for any unlawful purpose. You will keep the vehicle free of all claims and seizures by any government authority. You will not rent the vehicle to others or carry passengers for hire. If we pay any repair bills, storage bills, taxes, fines, or other charges on the vehicle, you will repay the amount when we ask for it. You will immediately notify us of any change in the address of where the vehicle is kept or the address where the vehicle is regularly located.

**SECURITY INTEREST:** You are giving us a security interest in the vehicle being purchased; all proceeds of the vehicle; all accessions; and any attachments, accessories, or equipment affixed to the vehicle within ten days of this Contract. The security interest also covers: (1) insurance premiums returned to us; (2) proceeds of insurance policies on the vehicle, and (3) proceeds of any insurance policies on your life or health financed in this Contract. This security interest secures payment of all amounts you owe in this Contract and in any transfer, renewal, extension, modification, refinancing, or assignment of this Contract. It also secures your other agreements in this Contract. For purposes of this Contract, we agree to forego any security interest you may have given under another agreement which secures your obligation under this Contract. You will cause or cooperate in causing our security interest (lien) on the vehicle to be shown on the title. You will not allow any subordinate or other liens to be placed on the vehicle.

**REQUIRED PHYSICAL DAMAGE INSURANCE:** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this Contract. You may buy this coverage from any insurer acceptable to us. You will make us loss payee and provide evidence of insurance. At any time during the term of this Contract, if you do not have physical damage insurance which covers both your and our interests in the vehicle, then we may buy it for you. If we do not buy physical damage insurance which covers both interests in the vehicle, we may, if we decide, buy insurance which covers only our interest, as permitted by applicable law.

We are under no obligation to buy any insurance, but may do so if we desire. If we buy either of these coverages, we will let you know what type it is and the charge you must pay. The charge will consist of the cost of the insurance and a Finance Charge at the Annual Percentage Rate applicable to this Contract, but not to exceed the highest rate permitted by law. You agree to pay the charge, at your option, in full within 10 days from the date we mail or tender to you a notice that we have paid for such insurance, or in equal installments along with the payments shown on the payment schedule.

If the vehicle is lost or damaged, you agree that we can use any insurance settlement either to repair the vehicle or to apply to your debt.

**INSURANCE CHARGES RETURNED TO US:** If any charge for required insurance is returned to us, it may be credited to your account or used to buy similar insurance or insurance covering only our interest in the vehicle. Any refund on optional insurance we obtain will be credited to your account or returned to you. Any insurance charges returned to us and credited to your account will be applied to as many of your installments as they will cover, beginning with the final installment.

**DEFAULT:** You are in default if: (1) you fail to make a regularly scheduled installment payment within 10 days of its due date; (2) any event occurs which substantially impairs the value of the vehicle; or (3) you breach any of your agreements or obligations under this Contract or if you die.

**REQUIRED REPAYMENT IN FULL BEFORE THE SCHEDULED DATE:** If you are in default, we can upon written notice to you and subject to any right you may have to cure the default, demand that you pay all you owe on this Contract at once. If you fail to pay, you will be liable for interest at the Annual Percentage Rate applicable to this Contract, but not to exceed the highest rate permitted by law. Notwithstanding anything else in this paragraph, the maturity of any amount owing on this Contract will not be accelerated where, following your default consisting solely of your failure to make timely installment payments and the subsequent repossession of the motor vehicle, you make timely tender of all amounts due under this Contract at the time of such tender other than amounts that would be due if this Contract were accelerated.

**RIGHT TO SET OFF:** To the extent permitted by operation of law, if you are in default, we can, subject to your right to cure the default, pay all or part of the amounts owed under this Contract from any deposits or funds you have with us without telling you ahead of time.

**REPOSSESSION OF THE VEHICLE:** Repossession means our taking the vehicle from you. If you are in default, we can repossess the vehicle upon written notice to you and subject to your rights to cure the default. To take the vehicle we can enter your property, or the property where it is stored, so long as it is done peacefully. If there is any personal property in the vehicle, such as clothing, we can store it for you. Any accessories, equipment or replacement parts will remain with the vehicle.

**GETTING THE VEHICLE BACK AFTER REPOSSESSION:** If we repossess the vehicle, state law may permit you to get it back (redeem) by curing any payment or other default(s) within the time allowed in the cure notice. If state law does not permit you to cure your default(s) in this manner, you may redeem the vehicle by paying the entire amount you owe on this Contract (not just past due payments) plus, to the extent permitted by law, the cost of taking and storing the vehicle, and other expenses that we have had. Your right to redeem the vehicle will end when the vehicle is sold.

**SALE OF THE REPOSSESSED VEHICLE:** We will send you a written notice of sale within the time period required by law before selling the vehicle. If you do not redeem the vehicle by the date on the notice, we can sell it. We will use the net proceeds of the sale to pay all or part of your debt. The net proceeds of sale will be figured this way: To the extent permitted by law, any charges for taking, storing, cleaning, advertising and selling the vehicle, any attorney's reasonable fees, any court costs and any other charges permitted by law will be subtracted from the selling price. If you owe us less than the net proceeds of sale, we owe you the difference, unless someone else has an interest in the vehicle. For example, we may be required to pay a lender who has given you a loan and also taken a security interest in the vehicle. If you owe more than the net proceeds of sale, to the extent allowed by law you will pay us the difference between the net proceeds of sale and what you owe when we ask for it. If you do not pay this amount when asked, you may also be charged interest at the highest lawful rate, not to exceed the Annual Percentage Rate applicable to this Contract, until you do pay all you owe to us.

**COLLECTION COSTS:** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorneys' reasonable fees and court costs.

**LATE CHARGE:** If all or any portion of a payment is more than ten days late, you will be charged a default charge of $50 or 5% of the unpaid amount of the installment, whichever is less.

**DISHONORED CHECKS:** A dishonored check fee of $25 or 5% of the amount of the check, whichever is greater may be assessed for any check returned to us for insufficient funds.

**DELAY IN ENFORCING RIGHTS AND CHANGES OF THIS CONTRACT:** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, we can extend the time for making some payments without extending others. Any change in terms of this Contract must be in writing and signed by us. No oral changes are binding. If any provision of this Contract conflicts with applicable law, it will be considered modified to comply with that law and the remaining provisions shall continue.

**WARRANTIES SELLER DISCLAIMS:** You understand that the Seller is not offering any express warranties unless the Seller extends a written warranty. This provision does not affect any warranties covering the vehicle which may be provided by the vehicle manufacturer.

**CREDIT INFORMATION:** You agree that we or our affiliate providing servicing or to whom this contract may be assigned may obtain a consumer credit report periodically from one or more consumer reporting agencies (credit bureaus) in connection with your application and any update, renewal, refinancing, modification or extension of this Contract. If you ask, you will be told the name and address of any credit bureau from which we or our affiliate obtained your credit report. We may also verify employment, pay, assets and debts. Anyone receiving a copy of this is authorized to provide us with such information. You agree that, to the extent permitted by law and as disclosed in our privacy notice, we, our assignee, any of our affiliates, and others may exchange credit, account and financial information about you.

**GOVERNING LAW:** This Contract is governed by the law of the State of Georgia and is the entire agreement between you and us.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## Guaranty

FOR VALUE RECEIVED, undersigned, jointly and severally if more than one, unconditionally guarantee payment and performance of all obligations of Buyer and Co-Buyer under the above Retail Installment Contract ("the Contract"), accept all provisions of the Contract and agree to pay all reasonable collection expenses and attorneys' reasonable fees incurred in enforcing this guaranty. Undersigned hereby waive demand for payment, notice of nonpayment, notice of acceptance of this guaranty and any benefits under Section 10-7-24 of The Georgia Code and consent to extensions of time of payment and other indulgences, including, without limitation, release of any guarantor of the Contract or release of the vehicle which is collateral for performance of the obligations of Buyer and Co-Buyer, which may be granted to Buyer and Co-Buyer or any guarantor of the Contract without notice to undersigned and whether or not (and before or after) repossession has been made or undertaken and whether or not suit has been brought against Buyer or Co-Buyer or any guarantor of the Contract. Undersigned shall be primarily and jointly and severally liable with Buyer and Co-Buyer for full performance of Buyer's and Co-Buyer's obligations under the Contract.

SIGNATURES (Sign Full Name in Ink):                 Date: _____

_____    _____   (Seal)  _____
Witness                   Guarantor                        Address

_____    _____   (Seal)  _____
Witness                   Guarantor                        Address

## SELLER'S ASSIGNMENT

Seller sells and assigns to the Assignee named below all of its right, title and interest in this Retail Installment Contract ("Contract"). Seller represents, warrants and covenants to Assignee that: (a)(i) no statements made or furnished to Assignee by Buyer or any Co-Buyer (collectively "Buyer"), Seller or any other person are untrue or incomplete; (ii) Buyer has not financed the down payment of the Vehicle described in the Contract ("the Vehicle"); (iii) Buyer is a bona fide applicant having legal capacity to enter into the Contract; (iv) the signature of the Buyer on all documents is genuine; and (v) the amount stated in the Contract to be due will in fact be due and payable at the time or times provided therein free of any claims, defenses, setoffs or counterclaims; (b) Seller has verified Buyer's identification; (c) The down payment for the Vehicle is paid in full with negotiable funds; (d) Seller has sold the Vehicle and the proceeds of the Contract are to be used to pay for such Vehicle and related items; (e) Seller had indefeasible title to the Vehicle immediately prior to the purchase by Buyer, and the right and authority to sell the Vehicle to Buyer, free and clear of all liens and encumbrances; (f) Seller warrants that the Vehicle is not a grey market or altered vehicle and is not salvaged, rebuilt or reconstructed from a total loss or otherwise materially impaired and the title to the Vehicle does not reflect such and the odometer statement executed by the Seller in connection with the Vehicle does not indicate true mileage unknown; (g) Seller has the authority to assign the Contract to Assignee free and clear of all liens and encumbrances; (h) Seller will secure and perfect for Assignee a security interest in the Vehicle free and clear of all liens or encumbrances, and deliver to Assignee evidence satisfactory to Assignee of such security interest within six months of the date of the Contract; (i) The description of the Vehicle is true and complete in the Contract and the Vehicle will be or has been duly delivered to and accepted without revocation by Buyer; (j) Insurance or other coverage provided or arranged by Seller does not violate any applicable law or regulation and insurance documentation and rebates of unearned premiums, if any, will be delivered to Buyer within the time required by law; (k) The Vehicle is insured by a company acceptable to Assignee against fire, theft and collision, Assignee is loss payee and written evidence of such insurance has been or will promptly be provided to Assignee; (l) All optional credit insurance sold by Seller to Buyer is for the full term of the Contract and is limited to coverage of Buyer; (m) Seller has provided Buyer with a completed Contract and any other document as required by applicable law, and the information filled in thereon by Seller is accurate; (n) Seller is licensed to the extent required by law; (o) Seller has complied with all applicable transaction reporting requirements including, without limitation, the requirement under Section 6050I of the Internal Revenue Code as may be amended from time to time to report cash receipts of more than $10,000, and its implementing regulations; (p) Seller has complied with Assignee's procedures regarding the Fair Credit Reporting Act (FCRA) and Equal Credit Opportunity Act (ECOA) including, but not limited to, the following: (i) Seller has only submitted to Assignee credit information on Buyer after Buyer's signatures were first obtained on a credit application acceptable to Assignee ("Application"); (ii) Seller has not submitted any credit information on any individual whose signature does not appear on the application; (iii) Seller has advised Buyer that his/her Application has been submitted to Assignee at Assignee's current address; and (iv) Seller has advised Buyer that credit was approved by Assignee; (q) Seller has complied with all requirements of the FCRA and ECOA and all other federal, state and local laws, rules and regulations applicable to the extension of credit and consumer protection or otherwise applicable to the sale of the Vehicle, including, without limitation, the requirements to provide Buyer with a foreign translation of the Contract; (r) Seller will promptly forward to the proper authorities all federal, state and local fees and taxes due in connection with the sale of the Vehicle; (s) Seller does not charge Buyer for filing fees or other costs paid by Seller to public officials to perfect Assignee's security interest in the Vehicle, except where allowed by law, nor does Seller make any type of charge, including documentary or processing charges, which Seller does not make in any other cash transaction; (t) Assignee shall have the right, but not the obligation, to inspect Seller's books, financial documents and other business records relating to this assignment or this Contract at Seller's place of business during Seller's normal business hours; and (u) upon request by Assignee, Seller shall promptly submit to Assignee signed financial statements of Seller's business, to include balance sheets, cash flow statements, profit and loss statements and such other information required by Assignee.

Each of these warranties, representations and covenants is material to Assignee's acceptance of this Contract. If any of them is breached or is erroneous, Seller unconditionally promises to accept reassignment of this Contract, without recourse against Assignee, and pay Assignee, upon demand (1) the unpaid balance of the Contract as determined by Assignee, (2) all losses and expenses incurred by Assignee as a result of such breach or untruth, and (3) out-of-pocket expenses paid or incurred by Assignee in connection with the collection of any amount due under the Contract, including attorneys' fees and costs of litigation, whether by or against Assignee, and expenses with respect to repossessing, storing, repairing and selling the Vehicle. In addition, Seller agrees to indemnify Assignee in the manner and to the extent specified in the preceding sentence if the Assignee suffers a loss or expense in any judicial or administrative proceeding because of any claim or defense asserted against Assignee as a result of any act or omission on the part of Seller. If this Contract is rescinded by court order, Seller shall pay Assignee the amount specified above.

Seller shall be liable even if a waiver, compromise, settlement or variation of the terms of the Contract releases the Buyer.

The provisions of this assignment shall be binding on the heirs, representatives, successors and assigns of Seller and shall inure to the benefit of the successors and assigns of Assignee. Seller waives notice of acceptance of this guarantee and assignment and notices of non-payment and non-performance.

This assignment is without recourse against Seller except as provided above and/or in another agreement, if any, between Seller and Assignee relating to the financing of retail installment contracts.

Assigned to:    Citizens Auto Finance, Inc. ("Assignee") (unless another assignee is named below.)

CC216606 (5/02)